UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KATHRYN FLENDER,

                           Plaintiff,

       -against-

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,[1]

                          Defendant.
------------------------------------------------------------x

MEMORANDUM & ORDER
11-CV-3142 (ENV)

VITALIANO, D.J.

      Plaintiff Kathryn Flender seeks review, pursuant to 42 U.S.C § 405(g), of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits ("SSI") under the Social Security Act ("Act"). The parties have filed cross-motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff argues that the administrative law judge ("ALJ") erred in failing to apply the appropriate legal standards, and that the decision was not supported by substantial evidence. The Commissioner counters that she correctly applied the relevant legal standards and that substantial evidence supports her final order concluding that Flender does not qualify for SSI benefits. For the reasons that follow, the Commissioner's motion is denied and Flender's cross-motion is granted to the extent that this case is remanded for further administrative proceedings.

## Background

      On December 9, 2008, Flender filed an application for SSI benefits based on a

---

[1]     Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Colvin is substituted for Michael J. Astrue as the defendant in this action. The Clerk is directed to amend the caption to reflect this change.

1

compounding of illnesses: systemic lupus erythematosus ("SLE"), Meniere's disease, headaches, rheumatoid arthritis and obesity. Compl. at 1.[2] The Social Security Administration ("SSA") denied the application on June 26, 2009. R. 45. Following the SSA's rejection of her application, Flender filed a request for a hearing, which took place on March 25, 2010 before ALJ Seymour Rayner. Id. Flender, who was and remains represented by counsel, appeared and testified. Id.

At the hearing, on direct examination, plaintiff stated that, beginning in 2004, she worked with her husband at a UPS store that they co-owned. R. 59. In late 2007, following a diagnosis of autoimmune disorder, which she described as a "connective tissue disorder" that causes neurological damage, she found herself unable to continue that work. R. 61-62. Since that time, Flender has not returned to work at the UPS store, even to offer occasional help, because "just being able to get out there from where we live is a big deal for me." R. 59. Neither has she gone on vacation. R. 70. In fact, the illness has, she says, at times left her bed-ridden, forcing her mother to fly up from Florida to help out as often as several times a month. R. 61.

Flender went on to state that, because of her illness, she could not even work a sedentary job. R. 65. As a point of reference, plaintiff testified that the simple act of coming to the hearing site had her "completely spent with my muscles by 9:15 [a.m.]." R. 65-66. Given these difficulties, plaintiff described her average day as limited to light reading and watching TV, but that even those activities can cause her to get dizzy. R. 67. Plaintiff did acknowledge, though, that the challengers of her illnesses were not totally disabling, testifying that she can, at times, perform various simple tasks, but emphasizing that her abilities wax and wane unpredictably. R. 65-69. She observed that "my family has . . . gotten used to the fact that I cannot be counted on

---

[2] Citations to plaintiff's complaint are designated as "Compl." Citations to the underlying administrative record are designated as "R."

for anything any time." R. 67.

After Flender had finished her direct testimony, the ALJ posed a series of questions focusing on her functional abilities, such as whether she can dress herself, perform chores, or walk without a cane. In response to these questions, plaintiff confirmed that she can walk without a cane but expressed difficulty with almost every other activity the ALJ asked about, including buttoning her coat and combing her hair. See R. 73-77. Again, Flender emphasized that her ability to perform these activities ebbed and flowed unpredictably. See, e.g., R. 73.

In addition to her testimony at the hearing, plaintiff provided copious medical records reflecting that her life had been dominated by visits to various doctors and struggles with a lengthening list of disorders. See R. 226-422. Many of these records were written by one of her principal treating physicians, neurologist Dr. Henry Moreta, over the course of several years. Dr. Moreta thoroughly and repeatedly noted the tests he ordered plaintiff to undergo and the conditions these tests revealed, which included seronegative arthritis, brain frontal lesion, vestibulopathy (damage to the balance portions of the inner ear), migraine, possible focal ischemia (reduced bloodflow to particular brain region), Meniere's disease and pulmonary nodules. See, e.g., 259-67. On top of Dr. Moreta's studies and findings, Flender submitted a 2007 evaluation from Dr. Paul Davey, an ENT, who diagnosed her with an autoimmune inner ear disease that would "probably continue to [cause] periods of tinnitus and balance disturbances for the foreseeable future." R. 438. Plaintiff also provided a 2009 evaluation from Dr. Shobha Patel, who recommended that, in light of Flender's serious illnesses, she avoid even sedentary work for one year. R. 360.

Following the close of evidence, on April 30, 2010, the ALJ issued his decision affirming the denial by the SSA of Flender's claim. In doing so, the ALJ tracked the appropriate

3

administrative regulations for determining whether a claimant meets the SSI definition of disability. Specifically, he first determined that plaintiff was not currently engaged in substantial gainful employment. R. 47. Next, the ALJ determined that plaintiff had a "severe impairment" that significantly limited her "ability to do basic work activities." Id. At the third step, where the ALJ determined plaintiff's conditions to be SLE and Meniere's disease, which he found not to be listed impairments,[3] id., requiring him to move on to determine whether Flender possessed the residual functional capacity ("RFC")[4] to perform her past relevant work, and found that she could perform "the full range of light work as defined in 20 CFR 404.1567(b)." Id. Notably, in the SSA guidelines, "light work" is one step more demanding than "sedentary work," which plaintiff's treating physician, Dr. Patel, had found her incapable of performing. See 20 CFR § 404.1567.

The notice of determination was primarily based on the findings that the diagnoses provided by Flender's treating physicians were incredible. Specifically, the ALJ found that plaintiff's disability claim was undermined by her own testimony that she could at times perform certain home activities, including the ability to "shower, dress, tie a bow . . . open envelopes,

---

[3] As plaintiff observes, the ALJ's finding on this point is questionable, since Appendix 1 lists as a qualifying disability "repeated manifestations of undifferentiated or mixed connective tissue disease" if coupled with symptoms such as severe fatigue and malaise as well as "limitation of activities of daily living." 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 14.06. The record indicates that plaintiff's condition may fit this category. However, plaintiff's illness need not fit a category particularized in Appendix 1 for her to receive SSI benefits, see 20 C.F.R. 404.1520(a)(v), and the ALJ's determination may have rested on his flawed analysis of plaintiff's symptoms, which is further discussed below. Accordingly, the issue need not be resolved here.

[4] According to SSA, "residual functional capacity" is when an "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." See 20 C.F.R. § 416.945(a); see also Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

4

open doors and drawers . . . hold a cup of coffee, eat with a knife and fork, take a skirt from a closet, and squeeze toothpaste on a toothbrush." R. 48. As a result of these acknowledgements, he wrote, the ALJ gave "less weight" to the opinions of several of Flender's treating physicians, especially Dr. Patel's recommendation against even sedentary work. These opinions and recommendations, the ALJ found, were "not consistent with the claimant's testimony of activities of daily living." R. 48. The ALJ also gave less weight to the report from Dr. Davey indicating balance disturbance from inner ear disease, among other things, observing that Flender "does not use a cane for balance." R. 49.

The decision of the ALJ became the final order of the Commissioner on May 13, 2011, when the Appeals Council denied review. Compl. at 2. Flender timely filed this action on June 30, 2011 to challenge the Commissioner's adverse determination.

## Standard of Review

Section 405(g) of the Act empowers district courts to review a disability decision of the Commissioner and affirm, reverse, or modify it, "with or without remanding . . . for a rehearing." See 42 U.S.C. § 405(g); see also Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004). Yet, this power of review is not unbounded. When evaluating a determination by the Commissioner to deny a claimant disability benefits, the reviewing court may reverse the decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 405(g); Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir.1998)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

Courts are advised to "keep[ ] in mind that it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record. " Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). When evaluating the evidence, "the court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). Thus, if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

## Discussion

A "disability" attaches for SSI benefits if it constitutes a reason for the claimant's "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Schaal, 134 F.3d at 500-01. The impairment must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382(a)(3)(B).

A cardinal principle governing the assessment of disability is the "treating physician rule." In making a disability determination, an ALJ must generally give "controlling weight" to the opinion of the claimant's treating physician as to the nature and severity of his patient's physical and mental impairments if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

6

evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Although the ultimate determination of disability is left to the ALJ hearing the proof, 20 C.F.R. § 404.1527(e)(2), it is equally clear that "a statement by a treating source that a claimant is disabled should not be disregarded" without a clear articulation of the reasons why the ALJ disregarded it. Arruda v. Comm'r of Social Sec., 363 Fed. Appx. 93, 96 (2d Cir. 2010). Thus, in analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir.1983); Wagner v. Secretary of Health and Human Servs., 906 F.2d 856, 862 (2d Cir.1990) ("[A] circumstantial critique by [a] non-physician[ ], however thorough or responsible, must be overwhelmingly compelling" to justify a denial of benefits). Rather, it is compelling that an ALJ who does not give controlling weight to a treating physician's medical opinion must articulate good, record-based reasons for doing so. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993); Santiago v. Barnhart, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006). Most important, if refusing to accord controlling weight to a treating physician's medical opinion, the ALJ "must explicitly consider," among other things, "(1) the frequen[c]y, length, nature and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citing Selian v. Astrue, 708 F.3d 409, 418 (2d Cir.2013)); see also Halloran v. Barnhart, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)).

It is clear from reviewing the record that the ALJ did not adhere to these standards. Plaintiff presented a clear consensus from multiple treating physicians that her various illnesses deprived her of the ability to perform regular and reliable work of any kind. In each case, the

7

ALJ disregarded these views for the sole reason that they contradicted his interpretation of plaintiff's testimony at the hearing. Specifically, as the ALJ noted, Dr. Davey "reported autoimmune disease and continuing balance disturbance . . . with dizziness, tinnitus and trembling," R. 49. In response to this diagnosis, the ALJ wrote, merely, that "less weight is given to this report, as the claimant does not use a cane for balance." Id. Similarly, the ALJ took note of Dr. Patel's finding of continuing pain from rheumatoid arthritis and the resulting recommendation that Flender avoid sedentary work for one year. R. 48. Nevertheless, the ALJ again assigned "less weight" to Dr. Patel's view because "no EMG was used to evaluate pain" and because plaintiff had testified that she had the ability to "put on a coat, button, zip, pull a blouse overhead, cook, open envelopes, open doors and drawers," and other trivial tasks. Id.[5] Such a marked deviation from two treating physician's views would require a substantial explanation. Instead, the ALJ provides only the threadbare conclusions from consultative doctors, whose views he affords "great weight" because they are "consistent with the claimant's activities of daily living and psychiatric findings." R. 49. In other words, the ALJ afforded weight to the testimony of medical experts based on whether they agreed with his own non-expert assessment of plaintiff's abilities. In using his own view as the yardstick, the ALJ "arbitrarily substitute[d] his own judgment for competent medical opinion." McBrayer, 712 F.2d at 799. Indeed, unanchored in authoritative medical evidence, his reasoning rests not on competent medical evidence but a lay critique of it. See Wagner v. Secretary of Health and

---

[5] According to SSA's guidelines, moreover, "light work" can "involve lifting . . . 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . [and] a good deal of walking or standing." 20 C.F.R. 404.1567(b). Thus, the ALJ not only discarded Dr. Patel's opinion in finding plaintiff not disabled, but, based solely on his evaluation of her testimony, determined that she was capable of performing work far beyond that which Dr. Patel had determined she was not able to perform.

8

Human Servs., 906 F.2d at 862.[6]

Violation of the treating physician rule is a fatal flaw in the reasoning of the subject notice of determination. That error is further reflected and compounded by the ALJ's failure to comply with the requirement to "explicitly consider" the factors enumerated in regulation and case law as a prerequisite for disregarding a treating physician's view. See Greek, 802 F.3d at 375. Simply stated, there is no meaningful discussion of the frequency, length, nature and extent of treatment provided by the treating sources, their special expertise or the amount and quality of the medical evidence they provided. Nor is there a substantive analysis of how such evidence contrasted with other healthcare or vocational evidence developed in the record. In its stead, the ALJ offers mere personal perceptions of how he believed the medical evidence was at odds with portions of Flender's testimony. Given its slapdash approach, the reasoning set forth in the ALJ's decision simply fails to justify its determination to give the treating psychiatrist's opinion slight weight. On this basis, remand is appropriate. See Valet v. Astrue, No. 10-CV-3282, 2012 WL 194970, at *19 (E.D.N.Y. Jan. 23, 2012) (remand was appropriate because the ALJ's reasoning in not affording controlling weight to the treating physician was "flawed and insufficient."); see also Jeffcoat v. Astrue, No. 09–CV–5276, 2010 WL 3154344, at *14 (E.D.N.Y. Aug.6, 2010) (remanding because ALJ failed to comprehensively set forth reasons for minor weight assigned to treating physician's opinions.)

Finally, the evidence the ALJ cites of Flender's ability to handle some basic tasks, upon

---

[6] Moreover, even when claiming to consider the opinions of treating physicians, the ALJ cherry-picked those pieces that comported with his pre-conceived view. While it is true, for example, that Dr. Moreta at times noted small favorable developments in plaintiff's condition, see, e.g., R. 259-61, a holistic review of his notes, which span several years, reveals a series of uncured illnesses and a trend toward worsening conditions. See, e.g., R. 265-72; 278-80; 299-300. The ALJ ignored those portions, presumably, because, like the opinions of Drs. Davey and Patel, they contradicted his already-determined view of the evidence.

which he relies to support his dismissal of her doctors' views and determination denying benefits, runs afoul of the maxim that "people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that a claimant need not be an invalid to be found disabled under the Social Security Act.") (citation omitted). It also fails to support his finding that Flender is not disabled. As is clear from Flender's testimony, "[t]here was no proof that [she] engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983). Bluntly, the ALJ's factual findings are "not supported by substantial evidence." Shaw, 221 F.3d at 131. These findings are the product of repeated errors and cannot stand.

## Conclusion

In line with the foregoing, the Commissioner's motion for judgment on the pleadings is denied and Flender's cross-motion is granted to the extent that the final order of the Commissioner is reversed, the decision of the ALJ is vacated, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this order.

The Clerk of Court is directed to enter judgment accordingly and to close this case for administrative purposes.

So Ordered.

Dated: Brooklyn, New York
March 14, 2016

/s/ USDJ VITALIANO

ERIC N. VITALIANO
United States District Judge